In the Matter of the Estate of JAMES F. MULVANA, Deceased.

Surrogate's Court, Franklin County, April 1, 1932.

*George J. Moore*, for the executrix.

*Edmund FitzGerald*, for Brasher Falls National Bank.

LAWRENCE, S. In this proceeding the executrix, Margaret Mulvana, filed a petition asking that the Brasher Falls National Bank be required to show cause why an order should not be made directing the bank to pay over and deliver to the executrix funds deposited by her. On return of the order to show cause the bank filed an answer, alleging lack of jurisdiction and claiming that a certain note held by the bank had been charged against the account and asking that the petition be dismissed.

There is not much dispute regarding the facts and no briefs are furnished by the attorneys.

James F. Mulvana died December 30, 1930. He was a farmer residing in the town of Bombay. On January 9, 1930, he borrowed from the Brasher Falls National Bank the sum of $5,000, and gave the bank two notes of $2,500 each. Apparently these notes were secured by collateral of the face value of $3,268, although the notes which have come to the attention of the court are not collateral in form. These notes were renewed by the deceased and the last renewals by deceased are as follows: Note September 2, 1930, $2,500, due in four months. Note March 25, 1930, $2,500, due in four months. The first-mentioned note came due about the time

of Mr. Mulvana's death and apparently nothing was done about it until sometime about March 25, 1931, when the second note became due. At that time it would appear that the executrix was asked to renew the notes. She refused until she had consulted with her attorney. She did so and the attorney had a conversation with the cashier of the bank, from which it seems that the bank desired to carry paper which was not past due and the question arose and was discussed as to the personal responsibility of the executrix in case she should renew the notes as executrix. The attorney apparently advised the cashier that the executrix might renew the notes on condition that she would not thereby become personally responsible, and a little later she states that she advised the cashier that she would sign the renewal notes if she did not thereby obligate herself personally. The cashier made up the renewals. One renewal is dated March 2, 1931, for $2,500, payable in four months. The other renewal is dated March 25, 1931, for $2,500, due in three months. The executrix signed these as follows: " James Mulvana Est. by Margaret Mulvana Executrix." On or about April 17, 1931, the executrix had an auction sale of the personal property on the farm. She realized on the sale in cash the sum of $1,072.01, and took a number of sale notes. This cash and these notes were taken to the Brasher Falls National Bank and the executrix states that when they were left at the bank she had a talk with the cashier, in which he told her he would receive payment on the sale notes, and she told him, in effect, that these funds were for the payment of the debts of the estate. At that time a credit slip for the cash was issued to " Margaret Mulvana Admx.," and as the various sale notes were paid, credit slips were issued, mostly to " James Mulvana Est.," but some to " Margaret Mulvana Admx." All were apparently credited to the same account. The deposits from sale notes amounted to $2,274.56, and some other notes which were not paid were returned to the executrix.

On or about June 4, 1931, the bank submitted a claim against the estate for the amount of the two notes, attaching copies of the first renewals, dated, respectively, March 2, 1931, and March 25, 1931, and stating the collateral held to secure them. Apparently there was another renewal, as one note would be due July 2, 1931, and the other would be due June 25, 1931.

The bank presents a copy of a note dated August 25, 1931, due in four months, for $2,563.38, signed " James F. Mulvana Est. by Margaret Mulvana Admx." This note is stated to be a renewal of a note due August 25, 1931. It would appear that when this note was renewed on August 25, 1931, nothing was said at the

time about the executrix becoming personally responsible. Just prior to that time there had been a change in cashiers. The present cashier states that this note was charged up to the estate account on December 31, 1931, for the sum of $2,614.65, which would include the interest, and that the original note was sent to Mrs. Mulvana. The other note apparently is still held by the bank, as well as the collateral.

The assets of the estate will only pay a percentage of the claims presented and allowed.

Sometime in December, 1931, and before the note was charged up, the attorney for the estate had a talk by telephone with Mr. Lantry, the present cashier, in which he asked the cashier why the bank would not pay the executrix the money on deposit to her credit as executrix, further stating that it was needed to pay the claims against the estate. The testimony shows that the cashier told him he would have to take the matter up with the bank officials, or, as stated by the cashier, with the attorney for the bank.

On December 24, 1931, a check was drawn on the Brasher Falls National Bank against the funds to the credit of the estate in the sum of $3,200, signed " James Mulvana Est. Margaret Mulvana, Admx." This was to the order of the Farmers National Bank of Malone and was sent through the usual channels for collection. It was presented to the Brasher Falls National Bank on December twenty-ninth, or December thirtieth, and returned with a memorandum, " No authority," and on December thirty-first one of the above-mentioned notes held by the bank was charged up to the account. It had become due December 25, 1931. At the time the check was presented and at the time the note was charged up there were more than sufficient funds to the credit of the estate in the bank to satisfy either the check or the note.

It would seem that the bank has not secured a preference. No claim is made that the executrix became personally liable on the notes, nor that her liability was substituted for the liability of the estate. No question seems to be raised that the bank is not entitled to the collateral.

The bank takes the position that the relationship of debtor and creditor existed between the bank and the estate and that, therefore, the bank had a right to charge up the note against the estate funds deposited with it.

If the bank should be allowed to create a preference in its own favor, it would destroy the marshaling of assets and their *pro rata* distribution. In my judgment the estate funds in the bank which were the proceeds of the sale of personal property owned by the

deceased were left in the bank for the purpose of paying the debts of the estate and could not be diverted to discharge some particular claim held by the bank. Under the circumstances, I look to the course of dealings between the parties. The bank states that it now has a deposit to the credit of the estate in the sum of $663.68, and has not disposed of the collateral which it says has a market value of only $900. The other note held by the bank became due January 2, 1932, in the amount of $2,627.09. No action has been taken on that note or on the collateral.

On June 4, 1931, the notes then held were presented as an ordinary claim against the estate, except that the securities held as collateral were set forth. A check against the deposit was drawn by the executrix and presented before the note was charged against the funds.

It seems to me that the evidence and the course of dealing clearly show that the funds deposited by the executrix were and should be treated as trust funds for the purpose of paying the debts of the estate, and that the bank had notice of their character. If they had been deposited in any other bank having a claim, this bank would have insisted that they be so considered. Their deposit in the bank which held the notes ought not to change their character. The renewal of the notes by the executrix should not change the character of the claim which the bank held, so as to make it possible to charge it against estate funds at the expense of other creditors.

One check and charges for protest fees seem proper deductions from the account.

My understanding is that the cash deposit, together with the amount collected from the sale notes, amounted in all to $3,346.57. From this should be deducted a Mahoney check of $67.25 from articles which belonged to him at the sale and protest fees of ninety-nine cents, leaving a balance to the credit of the estate of $3,278.33. This sum should be turned over to the executrix.

Submit order for delivery of funds.